## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **RAH-NITA BOYKIN, JENNIFER HARMON,** | : | |
| **and ELIZABETH RODRIGUEZ,** | : | |
| **on behalf of themselves and all** | : | |
| **others similarly situated,** | : | **Case No. 23-cv-00427** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **CLASS ACTION** |
| **THE PROCTER & GAMBLE COMPANY,** | : | **COMPLAINT** |
| | : | |
| | : | |
| **Defendant.** | : | **JURY TRIAL DEMANDED** |
| | : | |

Plaintiffs Rah-Nita Boykin, Jennifer Harmon and Elizabeth Rodriguez ("Plaintiffs"), by and through their attorneys, individually and on behalf of all others similarly situated, allege as follows upon personal knowledge as to themselves, and as to all other matters based upon the investigation undertaken by counsel.

## <u>NATURE OF THE CASE</u>

1.      This is a class action lawsuit brought against Defendant the Procter & Gamble Company ("P&G" or "Defendant") by Plaintiffs on behalf of themselves and on behalf of all other similarly situated purchasers of Febreze CAR Vent Clips ("Febreze Clips") which have caused damages to their vehicles.

2.      P&G designs, manufactures, distributes, sells, and/or otherwise places into the stream of commerce  a series of car vent clip products designed to eliminate or mask odors under the "Febreze" brand name.

3.      P&G's Febreze Clips are intended to be clipped onto the interior air conditioning vents of automobiles. P&G represents that the scent of a clip is "activated" once attached, and

then removes odor with a pleasant-smelling scent for up to 30-40 days. Along with touting the ease of installation and use, P&G represents that the Febreze Clips "work in virtually every vehicle"[1] and are "safe to use."[2]

4.     However, contrary to P&G's representations, the Febreze Clips are not "safe to use" because they invariably cause damage to users' cars.

5.     P&G, with its long history of producing products under the Febreze brand, knew or should have known that the Febreze Clips contain one or more design and/or manufacturing defects which under normal use and conditions, cause the Febreze Clips to leak liquid substances (the "Defect"), thereby damaging the interior surfaces of the vehicle, forcing Plaintiffs to pay out-of-pocket expenses to repair the damages.

6.     Despite P&G's longstanding awareness of the Defect, P&G has not recalled the Febreze Clips or notified consumers of the Defect.

7.     Instead, P&G actively ignored customer complaints regarding the Defect. Many consumers have submitted complaints via various online forums, including through P&G's own website as well as other websites such as Amazon and Walmart regarding the damages caused by the Defect. Rather than recognizing the Defect, P&G has failed to reimburse consumers for their damages and/or warn consumers of the Defect, instead choosing to actively conceal the Defect.

8.     As a result of the Defect and P&G's active concealment of it, Plaintiffs and similarly situated purchasers and users of the Febreze Clips have sustained – and continue to sustain – ascertainable and significant loss of money, property and/or loss in value of their

---

[1] https://www.febreze.com/en-us/products/car-air-fresheners-unstopables-breeze (last visited July 7, 2023).
[2] https://www.febreze.com/en-us/ingredients-safety/our-safety-standards (last visited July 7, 2023).

automobiles. They have also been harmed for overpaying for a product with an undisclosed, material defect.

9.     Had Plaintiffs and Class members known of the Defect at the time of their purchase, they would not have purchased the Febreze Clips.

10.    As set forth below, P&G's conduct violates various consumer protection laws, warranty statutes, and the common law. Plaintiffs bring this suit on behalf of themselves and those similarly situated to prevent P&G from producing, marketing, and selling more Febreze Clips with the Defect, and to obtain damages, restitution, and all other available relief for economic harm already caused.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has over supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.    This Court has personal jurisdiction over Defendant because it transacts substantial business in Ohio and in this Judicial District. Defendant is an Ohio corporation, is headquartered in Cincinnati, Ohio, and sells its Febreze Clips and other products throughout the State of Ohio. Defendant has intentionally availed itself of the laws and markets of this District through the distribution and sale of its products in this District. In addition, Plaintiffs' causes of action arise out of Defendant's contacts with Ohio.

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this Judicial District, and because Defendant resides in this Judicial District.

## THE PARTIES

### Plaintiffs

14.     Plaintiff Rah-Nita Boykin is an Illinois citizen and resident of Country Club Hills, Illinois. Plaintiff Boykin purchased Febreze Clips in March or April of 2023. She promptly clipped one onto her vehicle and, within approximately one week, noticed that the product was leaking above her center console of her vehicle. This ended up causing extensive damage to the console. As a result of P&G's failure to disclose the presence of the Defect and other conduct herein, Plaintiff Boykin has been injured.

15.     Plaintiff Jennifer Harmon is a Kentucky citizen and resident of Campbellsville, Kentucky. She purchased a Febreze Clip at a Dollar Store in or around June of 2022 and placed it on her husbands' truck. Unfortunately, the Febreze Clip leaked onto the dashboard and bubbled up the rubber of the dashboard. Plaintiff Harmon also placed the Febreze Clip into her own vehicle; three weeks later it had leaked onto the vehicle's air vent, the dashboard, trim, and radio screen, with parts of it being bubbled up and causing interior damage. Plaintiff Harmon spent $192 for a professional detailer to remove it, but he was unable to do so. She also contacted P&G without success in an attempt to solve the issue. As a result of P&G's failure to disclose the presence of the Defect and other conduct herein, Plaintiff Harmon has been injured.

16.     Plaintiff Elizabeth Rodriguez is a California citizen and resident of Los Angeles, California. Plaintiff Rodriguez purchased a Febreze Clip in March of 2023 and, within three weeks, it started leaking a liquid substance. It removed some of the dashboard paint, Plaintiff went to a carshop and was told that she would have to order a new dashboard part to replace it. She also contacted P&G without success in an attempt to solve the issue. As a result of P&G's failure to disclose the presence of the Defect and other conduct herein, Plaintiff Rodriguez has been injured.



**The Defendant**

17.     Defendant, the Procter & Gamble Company, is incorporated in the State of Ohio, with its principal place of business located at One Procter & Gamble Plaza Cincinnati, Ohio 45202. Defendant manufactures, markets, and distributes the clip throughout Ohio and the United States.

**FACTUAL ALLEGATIONS**

**Febreze Car Clips and Nature of the Defect**

18.     P&G designs, manufactures, distributes, markets, and sells household and automotive products to consumers. In 2022, P&G earned approximately $80.2 billion in annual revenue, and $14.4 billion in net income.

19.     Defendant's Febreze Clip is one of the most popular brands of car air fresheners and odor eliminators in the United States.

20.     The name "Febreze" comes from the words "fabric" and "breeze." First introduced in test markets in March 1996, the fabric refresher product has been sold in the United States since June 1998, and the line has since branched out to include air fresheners (Air Effects), plug-in oil (Noticeables), scented disks (Scentstories), odor-eliminating candles, and the automotive air fresheners (Febreze CAR) that are the subject of this complaint.

21.     Upon information and belief, Febreze continues to be one of the fastest growing brands in P&G's portfolio of household brands.

22.     P&G markets and sells its Febreze Clips through a variety of third party retailers, including grocery stores, Amazon, Target, Walmart, CVS.

23.     According to P&G, the Febreze Clips "work in virtually every vehicle"[3] and are activated by firmly pushing the clip onto the car vent until the driver hears it "click in." P&G also markets the Febreze Clips as "safe" to use.[4]

---

[3] https://www.febreze.com/en-us/products/car-air-fresheners-ember (last visited July 7, 2023).
[4] https://www.febreze.com/en-us/ingredients-safety/our-safety-standards (last visited July 7, 2023).

24.     What P&G does not disclose, however, is that the Febreze Clips contain a Defect which causes them to leak oil and/or other fragrance substances, thereby causing damage to the interior surfaces of the vehicles they are clipped onto.

25.     P&G has long been aware of the Defect through pre-release testing and various consumer complaints, yet it has done nothing to remedy the Defect or disclose its existence to unsuspecting customers.

**Customer Complaints About the Defect**

26.     Plaintiffs' experiences are by no means isolated or outlying occurrences.

27.     For years, consumers have complained online about the Defect. A rudimentary internet search reveals numerous forums full of Febreze Clip buyers and/or users who have the same complaint: Liquid substances leak from the Febreze Clips onto the interior surfaces and interior components of the vehicles in which they are used, causing damage to the vehicles.

28.     Complaints made to various websites and online public forums show that the Defect has recurred for years, and that P&G has failed to remedy or disclose the Defect to consumers, leaving them perplexed as to the cause of the Defect and the resulting damage to their vehicles.

29.      Complaints about the Defect fill the pages of various websites such as Amazon, Walmart, and HomeDepot and online public discussion boards dedicated to reviews of the Febreze Clips.

30.     A compilation of some of the complaints can be found below:

 Tammy W.



**Leaked! Damaged Dash trim!**

Reviewed in the United States 🇺🇸 on September 13, 2020

Scent: Linen | Size: 5 Count (Pack of 1)

Don't buy! Leaked and caused damage to the trim on my dash.

Helpful    ⬆ **Share**        Report

 Melissa

⭐☆☆☆☆ **Verified Purchase**

## Leaked!!!

Reviewed in the United States 🇺🇸 on August 11, 2019

Scent: Linen  |  Size: 5 Count (Pack of 1)



I've been buying Febreze vent clips for years and have never had a problem. I'm not sure if these are authentic, but the only 2 I've used out of this pack have leaked and took the plastic off of my Lexus. Also, there was no scent coming from them even when I turned the air on high. The only way you could smell them is if you put them against your nose. Forever regret buying these.

25 people found this helpful

Helpful   ⬆ Share                                    Report

 J. Rogan

★★★☆☆ **Verified Purchase**

## Leak

Reviewed in the United States 🇺🇸 on February 11, 2019

Scent: Linen | Size: 5 Count (Pack of 1)

I love the smell of these car fresheners , which is why I purchased another multi pack. After my last one finally was down to the last bit of fragrance, I opened my new multi pack and clipped a new one on my heat vent ( about 5-6 days ago). But I noticed that strong smell on my hands after I came in the house to begin cooking. I washed my hands and thought nothing of it at first. Then every time I rode in my car , I noticed the smell was very strong. I also noticed that the liquid level was going down very fast. Today it was near the bottom. ( something that it took several weeks for the last one to reach). I pulled it from the vent to look at it and noticed the oily fragrance on my fingers. ( hence the strong smell ). My vent clip has a leak! Since i have a multi pack, I'm hoping that the others do not also leak. I'm willing to let this one slide as long as the others are ok. If not, I will be VERY disappointed.

12 people found this helpful

Helpful |  Share | Report



### jonathan krango

⭐☆☆☆☆ **Verified Purchase**

## they must be defective

Reviewed in the United States 🇺🇸 on July 10, 2021

Scent: Linen | Size: 5 Count (Pack of 1)



this is the second time i ordered these maybe from a different supplier .The first time they were fine . this time they do not give off any fragrance .

| Helpful | ⬆ Share | | Report |

**by**
**[Jagator](#)**
**Join**

**A defective Febreze air freshener ruined my vehicle dash. Febreze offers a $50 gift card because I threw it away. [5]**

---

[5] https://www.reddit.com/r/Wellthatsucks/comments/u46tao/a_defective_febreze_air_freshener_ruined_my/ (last visited July 7, 2023).



Howdy all. New to the forums here. Just bought a 2013 Kia Soul! YEAH!

Unfortunately, I bought one of those blasted Febreze air scent things for the car. The ones that fit on the air vents.

Well, it leaked. I got back in my car a day later and the goo that came out of the Febreze device melted the paint off of the dashboard and literally ETCHED the air vent as well!

I've posted pics. What would be the best way to paint over what has chipped off so that it seamlessly blends with the rest of what's still there? I've been googling replacement air vents to no avail. Any pointers there?

Thanks guys! Looking to have fun modding this car...after fixing it's first boo-boo.[6]

---

[6] https://www.kiasoulforums.com/threads/febreze-ate-paint-off-dashboard-now-what.83529/ (last visited July 7, 2023).



Febreeze air freshener ruined my Navigation screen! What color is int. paint??
By surferd15, April 12, 2013 in Interior, A.C., Heat, Interior Trim

I had one of those oil Febreeze air fresheners in my car clipped to my vent. It leaked and ate the silver paint on the navigation screen and then my cupholder. I am annoyed because my interior is very clean and now it ruined!!! What paint color is the silver paint on the MKX? Here are some pics of the damage. A little search on the internet and it seems ppl. have had this problem and Febreeze doesn't care that its products ruin interiors of customer cars.[7]

**P&G Had Knowledge of and Actively Concealed this Material Defect**

31.     P&G is aware of, or should have been aware of, the Defect in the clip, which it

continues to sell.

32.     Defendant controls the manufacture, development, marketing, sales and support

for the Febreze Clips. Accordingly, Defendant was responsible for performing pre-release testing

---

[7] https://www.fordedgeforum.com/topic/12347-febreeze-air-freshener-ruined-my-navigation-screen-what-color-is-int-paint/ (last visited July 7, 2023).

on the Febreze Clips, which would have alerted it to the Defect. On information and belief, and based on P&G's Product Safety & Compliance disclosures, P&G "carefully evaluate[s] the safety of all products and ingredients before they go to market, using well-established risk assessment methods to understand both hazards and potential exposures."[8] P&G states that "[t]hese evaluations are a mandatory part of the company's product development process, and begin during the early stages of a product's design" and "[t]he same safety standards are used everywhere [P&G] sell or make products." P&G goes on to state that it "will provide interested parties with relevant and appropriate factual information about the safety of [its] products and packaging."[9]

33.     P&G's pre-release testing methods, which include approaches "based on broadly accepted practices for the scientific assessment of safety" are aimed at "evaluat[ing] the potential for an ingredient to cause adverse effects using published and accepted scientific methods." P&G also "evaluate[s] potential exposures for people and the environment, considering worst-case product use scenarios based on [its] understanding of how [its] products are actually used, as well as how they may reach the environment."[10] Accordingly, P&G's rigorous testing to ensure quality necessarily revealed to it that the Febreze Clips would leak during the course of normal use, thereby damaging surrounding surfaces.

34.     P&G had exclusive knowledge that the Febreze Clips were defective such that they were predisposed to leak and fail.

---

[8] https://us.pg.com/policies-and-practices/product-safety-and-compliance/ (last visited July 7, 2023).
[9] *Id.*
[10] *Id.*

35.     In addition to pre-release testing, Defendant was alerted to the Defect through a host of online consumer complaints, as discussed *supra*. Despite the fact that similar complaints have been made for several years, Defendant decided to sell the Febreze Clips without modifying the product or disclosing the Defect.

36.     Despite the complaints regarding the Defect to be numerous and recurring, P&G has not provided any relief to Plaintiffs or others who purchased and/or used the clips and were damaged as a result.  All putative class members were injured in that they paid a premium to purchase a product with an undisclosed, material defect that directly interferes with the core functionality of the clips.

### CLASS ACTION ALLEGATIONS

38.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated (the "Class") pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and 23(b)(3). Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Together, the below Nationwide Class and Illinois, Kentucky and California Subclass are referred to herein as the "Class." Plaintiff seeks to represent the following Classes:

> Nationwide Class:
>
> All persons or entities in the United States who have purchased or used a Febreze Clip.
>
> Illinois Subclass:
>
> All persons or entities in Illinois who have purchased or used a Febreze Clip.

<u>Kentucky Subclass:</u>

All persons or entities in Kentucky who have purchased or used a Febreze Clip.

<u>California Subclass:</u>

All persons or entities in California who have purchased or used a Febreze Clip.

39.     This action has been brought and may be properly maintained as a class action for the following reasons and meets the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3):

a.      <u>Numerosity</u>: Members of the Class are so numerous that their individual joinder is impracticable. Although the exact number of Class members is not certain, the disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and the Court. Information concerning the exact size of the putative class is within the possession of Defendant and may be found through discovery.

b.      <u>Existence and Predominance of Commons Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

i.      Whether the Febreze Clips suffer from a Defect that causes them to leak liquid substances;

ii.     Whether Defendant has breach its contract(s) and/or warranties with Plaintiff and members of the Class;

iii.    Whether Defendant knew or should have known of the Defect but failed to disclose the problem and its consequences to its consumers;

iv.    Whether the defective nature of the Febreze Clips constitutes a material fact that a reasonable consumer would have considered in deciding whether to purchase or use the Febreze Clips;

v.    Whether Defendant should be required to disclose the existence of the Defect;

vi.    Whether the defective Febreze Clips should be recalled or repaired, and whether Defendant should otherwise make Plaintiff and the Class whole; and

vii.    Whether Defendant's conduct violates the various consumer protection statutes asserted herein.

These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class.

c.    <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class since each Plaintiff purchased a Febreze Clip, just like all members of the Class. Plaintiffs' claims are based upon the same legal and remedial theories as the proposed Class and involve similar factual circumstances. Furthermore, Plaintiff sand all members of the Class sustained monetary injury arising out of Defendant's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of itself and all absent Class members.

d.    <u>Adequacy</u>:  Plaintiffs are adequate representative of the Class because of the fact that: (1) their interests do not conflict with the interests of the Class that they seeks to represent; (2) they have retained counsel competent and highly experienced in complex class action litigation; and (3) they intend to prosecute this action vigorously in litigation.

The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

      e.    <u>Superiority</u>:  The proposed class action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because in this case a class action is superior to other available methods for the fair and efficient adjudication of the controversy. A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class since it will be both individually and institutionally more cost efficient and effective to litigate this way. Individualized litigation presents a potential for inconsistent or contradictory judgments. Additionally, individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. A class action presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court for both the individual person and the entire court system.

      f.    <u>Predominance:</u> The proposed action meets the requirements of Federal Rule of Civil Procedure 23(b)(3) since questions of law and fact common to the Class predominate over any questions which may affect only individual Class members

      g.    Defendant has acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate. In the absence of a class action, Defendant would be able to be unjustly enriched and retain the benefits of its wrongful conduct.

## VIOLATIONS ALLEGED

### COUNT I
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

**(On behalf of all Plaintiffs and the Nationwide Class or,
alternatively, the California, Illinois, and Kentucky Classes)**

40.     Plaintiffs repeat and incorporate herein by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

41.     The implied warranty of merchantability included with each sale of a Febreze Clip means that P&G warranted that they (i) would pass without objection in trade under the contract description; (ii) was fit for the ordinary purposes for which the Febreze Clips would be used; and (iii) conformed to the promises or affirmations of fact made on the Febreze Clips' labeling.

42.     The Febreze Clips would not pass without objection in the car air freshener and odor eliminator trade because, under normal use, the Febreze Clips are prone to leak oil and/or other substances that cause significant damage to the interior surfaces and interior components of vehicles in which they are used. These circumstances also make them unfit for the ordinary purposes for which such Febreze Clips are used.

43.     Moreover, the Febreze Clips are not adequately labeled because their labeling failed to disclose the Defect and associated difficulties and did not advise Plaintiffs or Class members of the same prior to experiencing the Defect.

44.     P&G was given notice of the Defect through numerous complaints and warranty claims it received.

45.     As a direct and proximate result of P&G's breach of the implied warranty of merchantability, the proposed Class members received goods with substantially impaired value and have experienced actual damages. Plaintiffs and Class members have been damaged by the

diminished value of the Febreze Clips, and their malfunctioning, and actual and potential repair costs for damages caused by the Defect.

## COUNT II
## BREACH OF EXPRESS WARRANTY

**(On behalf of all Plaintiffs and the Nationwide Class or,
alternatively, the California, Illinois, and Kentucky Classes)**

46.     Plaintiffs repeat and incorporate herein by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

47.     Through its product labeling and advertising, P&G created written express warranties and expressly warranted to Plaintiffs and the other members of the Class that the Febreze Clips would be of high quality, at a minimum would work properly, and would be free from defects and fit for normal use.

48.     These affirmations and promises were part of the basis of the bargain between P&G and its customers.

49.     P&G breached these express warranties because the Febreze Clips were defective as set forth above.

50.     As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and the members of the Class have been damaged in an amount to be determined at trial.

## COUNT III
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

**(On behalf of Plaintiff Rodriguez and the California Subclass)**

51.     Plaintiff Rodriguez realleges and incorporates by reference all preceding allegations as if fully set forth herein.

52.     Plaintiff Rodriguez is a resident of California.

52.     P&G is a "person" as defined by Cal. Bus. & Prof. Code §17201.

53.     P&G violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in the following unlawful, unfair, and deceptive business acts and practices:

>    a.   Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the reliability of the product of Plaintiff Rodriguez and California Subclass Members, including duties imposed by the FTC Act, 15 U.S.C. § 45; and
>
>    b.   Omitting, suppressing, and concealing the Defect to Plaintiff Rodriguez and California Subclass Members.

54.     These omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's product. Plaintiff Rodriguez would not have purchased the product in the first instance had this material information been disclosed by P&G.

55.     As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff Rodriguez and California Subclass Members were injured and suffered monetary and non-monetary damages, as described herein.

## COUNT IV
### VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### Cal. Civ. Code §§ 1750, *et seq.*

**(On behalf of Plaintiff Rodriguez and the California Subclass)**

56.     Plaintiff Rodriguez re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

57.     The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") is a comprehensive statutory scheme that is to be liberally construed to protect consumers against

unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

58.     P&G is a "person" as defined by Civil Code §§ 1761(c).

59.     Plaintiff Rodriguez and the California Subclass are "consumers" as defined by Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

60.     The following acts and practices of P&G violated Civil Code § 1770, *et seq.*, in connection with the sale of Clips to Plaintiff Rodriguez and California sub-class members:

    a.   Representing that goods or services have characteristics that they do not have;

    b.   Representing that goods or services are of a particular standard, quality, or grade when they were not;

    c.   Advertising goods or services with intent not to sell them as advertised; and

    d.   Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

61.     P&G's omissions were material because they were likely to deceive reasonable consumers about the suitability of their use in vehicles.

62.     As a direct and proximate result of P&G's violations of California Civil Code § 1770, Plaintiff Rodriguez and California Subclass Members have suffered and will continue to suffer injuries.

## COUNT V
## VIOLATIONS OF KENTUCKY CONSUMER PROTECTION ACT
### Ky. Rev. Stat. § 367.110, *et seq.*

**(On behalf of Plaintiff Harmon and the Kentucky Subclass)**

63.     Plaintiff Harmon realleges and incorporate by reference all preceding allegations as though fully set forth herein.

64.     The Kentucky Consumer Protection Act was created to protect Kentucky consumers from deceptive and unfair business practices.

65.     Plaintiff Harmon paid for the Clips for personal use.

66.     P&G marketed and advertised the defective product to consumers in Kentucky. In addition, P&G, among other things, sold the defective product in Kentucky, shipped the defective product to Kentucky, and otherwise engaged in trade or commerce, or conducted business related to the defective product in Kentucky.

67.     P&G knowingly concealed and failed to disclose the existence of the Defect in the Febreze Clips.

68.     P&G's conduct constitutes the act, use or employment of deception, false promise, misrepresentation, unfair practice and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of merchandise, in trade or commerce in Kentucky, making it unlawful under Ky. Rev. Stat. § 367.110.

69.     P&G's conduct was fraudulent and deceptive because the omissions created a likelihood of confusion and misunderstanding and had the capacity or tendency to deceive and, in fact, did deceive, ordinary consumers, including Kentucky Plaintiff. Ordinary consumers, including Kentucky Plaintiff, would have found it material to their purchasing decisions that the Febreze Clip was defective. Knowledge of those facts would have been a substantial factor in Kentucky Plaintiff's, as well as other Kentucky Subclass members', decision to purchase the product.

70.     Accordingly, pursuant to Ky. Rev. Stat. § 367.110, Kentucky Plaintiff and Kentucky Subclass members are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Those damages are: the difference between the values of the defective product as represented (their prices) paid and their actual values at the time of purchase ($0.00), and/or the cost to replace the defective product; and other miscellaneous incidental and consequential damages. In addition, given the nature of P&G's conduct, Kentucky Plaintiff and Kentucky Subclass members are entitled to all available statutory exemplary, treble, and/or punitive damages and attorneys' fees based on the amount of time reasonably expended and equitable relief necessary or proper to protect them from P&G's unlawful conduct.

## COUNT VI
### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

**(On behalf of Plaintiff Boykin and the Illinois Subclass)**

71.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

72.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. §505/1, *et seq.,* was created to protect Illinois consumers from deceptive and unfair business practices.

73.     Plaintiff Boykin and Illinois Subclass members are persons who purchased Clips for personal purposes and personal use.

74.     P&G's conduct described herein constitutes use or employment of deception, false promise, misrepresentation, unfair practice and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of merchandise, the Clips, in trade

or commerce in Illinois, with the intention that Plaintiffs and Illinois Subclass members would rely on such conduct in deciding to purchase the Recalled Devices, making it unlawful under 815 Ill. Comp. Stat. Ann. §505/1, *et seq*.

75. Accordingly, Plaintiff Boykin and Illinois Subclass members are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Illinois Plaintiffs and Illinois Subclass members are entitled to all available statutory, exemplary, treble, and/or punitive damages and attorneys' fees based on the amount of time reasonably expended and equitable relief necessary or proper to protect them from Defendant's unlawful conduct.

**COUNT VII**
**NEGLIGENCE**

**(On behalf of all Plaintiffs and the Nationwide Class or,**
**alternatively, the California, Illinois, and Kentucky Classes)**

76. Plaintiffs repeat and incorporate herein by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

77. P&G owed a duty of care to Plaintiff and members of the Class that the Febreze Clips would actually work as intended and to give appropriate warnings about all known dangers and risks associated with the intended use to the foreseeable users of the Febreze Clips including the Plaintiffs and Class members.

78. In light of the various complaints submitted to and about P&G concerning the Febreze Clips, it was reasonably foreseeable to P&G that the Defect could cause harm to property.

79. As a direct and proximate result of the breach of its duty, Plaintiff and Class members have been damaged and are therefore entitled to damages since Plaintiffs and Class members paid the purchase price for the Febreze Clips, although they would not have purchased

25

Febreze Clips at all, or would have paid less for the Febreze Clips, if they had known the reality of the Febreze Clips

80.     As a direct and proximate result of the breach of its duty, Plaintiffs have experienced harm both to the Febreze Clips themselves, as well as to their automobiles.

<u>**COUNT VIII**</u>
**UNJUST ENRICHMENT**

**(On behalf of all Plaintiffs and the Nationwide Class or,
alternatively, the California, Illinois, and Kentucky Classes)**

81.     Plaintiffs repeat and incorporate by reference the preceding allegations. This claim is pled in the alternative to the breach of warranty based counts.

82.     Plaintiffs and Class members have conferred a benefit on Defendant by purchasing the Febreze Clips possessing the Defect. This benefit is measurable using the price of Defendant's Febreze Clips. Defendant appreciates or has knowledge of such benefits.

84.     Defendant's retention of this benefit violates principles of justice, equity, and good conscience.

85.     It would be inequitable and unjust for Defendant to retain the benefit of revenues obtained from purchases of its Febreze Clips, because P&G concealed a known material fact concerning the quality and performance of the Febreze Clips.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request, on behalf of themselves and members of the Class, that this Court:

A.    Determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.    Award all actual, general, special, punitive, incidental, statutory, restitution and consequential damages to which Plaintiff(s) and Class members are entitled;

C.    Appointing Plaintiffs as representatives of the Class and the designation of Class Counsel;

D.    Grant appropriate injunctive and/or declaratory relief, including without limitation, an order requiring Defendant to replace, recall, or adequately repair the defective Febreze Clips, and/or to require Defendant to provide adequate curative notice regarding the true nature of the defect;

E.    An award to Plaintiffs and the Class of reasonable attorney's fees and costs;

F.    An award to Plaintiffs and the Class of reasonable pre-judgment and post-judgment interest; and

G.    Grant such further and other relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

Dated: July 12, 2023                    Respectfully submitted,

*/s/ Joseph M. Lyon*

Joseph M. Lyon (0076050)
Kevin M. Cox (0099584)
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333
*jlyon@thelyonfirm.com*

*kcox@thelyonfirm.com*

**SHUB & JOHNS LLC**
Jonathan Shub
Benjamin F. Johns
Samantha E. Holbrook
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: (610) 477-8380
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

***Attorneys for Plaintiffs***