**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| RAH-NITA BOYKIN, *et al.*, | : | |
| *Plaintiffs*, | : | Case No. 1:23-cv-427 |
| vs. | : | Judge Jeffery P. Hopkins |
| THE PROCTER & GAMBLE COMPANY, | : | |
| *Defendant*. | : | |

---

## OPINION AND ORDER

---

Automotive air fresheners, like the Febreze Clips manufactured by Defendant The Proctor & Gamble Company ("P&G"), serve a practical purpose for drivers and passengers alike. Named Plaintiffs Rah-Nita Boykin, Delaney Jones, Brenda Keegan, Rasheeda Alexander, Mackenzie Gallagher, Fabjon Shehu, Toni Kellyghan, and Janna Jeansonne were enticed to buy the Febreze Clips and found satisfaction in the product until they discovered that the Febreze Clips had leaked and damaged their vehicles' interior.

Named Plaintiffs bring this product liability action on behalf of themselves and similarly situated Febreze Clips purchasers. P&G asks the Court to strike the class allegations in Named Plaintiffs' Amended Complaint (Doc. 11) and to dismiss Named Plaintiffs' individual claims. Doc. 12 (the "Motion"). Named Plaintiffs oppose these requests. *See* Doc. 13. For the reasons below, the Motion (Doc. 12) is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

P&G designs, manufactures, distributes, and sells one of the most popular brands of automotive air fresheners meant to eliminate or mask odors ("Febreze Clips"). Am. Compl., Doc. 11, ¶¶ 2, 26–27. P&G instructs consumers to attach the Febreze Clips to the interior air conditioning vents in their vehicles to activate the "pleasant-smelling" liquid scent and remove odor for up to 30–40 days. *Id.* ¶ 3. P&G represents to consumers that the Febreze Clips are easy to install, safe to use, and work in virtually all vehicles. *Id.* ¶¶ 3, 28, 31.

Named Plaintiffs are residents of various states who bought Febreze Clips from third-party retailers. *Id.* ¶¶ 1, 16–23. Each of them paid about $2 to $7 for an individual clip and attached the clip to their vehicle's air conditioning vent. *Id.* Soon after, Named Plaintiffs noticed that the Febreze Clips were partially or completely leaking, resulting in damage to their vehicles' consoles, entertainment systems, buttons, carpets, dashboards, and vents. *Id.* Certain Named Plaintiffs (Ms. Keegan, Ms. Gallagher, and Ms. Jeansonne) took their vehicles to dealerships or repair shops and incurred out-of-pocket repair expenses. *Id.* ¶¶ 19, 20, 23. Other Named Plaintiffs (Mr. Shehu and Ms. Kellyghan) contacted or submitted a claim to P&G seeking to remedy the issue. *Id.* ¶¶ 21, 22.

Named Plaintiffs sue P&G on behalf of themselves and on behalf of similarly situated Febreze Clip purchasers in several states, including California, Illinois, North Carolina, Texas, Montana, Florida, Tennessee, and Louisiana. Doc. 11, ¶¶ 1, 49. They contend that Febreze Clips contain a defect that causes them to leak oil and/or other fragrance substances, thereby damaging the interior surfaces of the vehicles to which they are clipped. *Id.* ¶ 32. Named Plaintiffs allege that P&G is—and has long been—aware of this defect based on the results of the company's pre-release quality testing procedures, the high volume of online

2

customer complaints, and a prior lawsuit centering on this issue. *Id.* ¶¶ 32–35, 38, 41, 43, 45. That said, P&G continued to sell Febreze Clips without modifying the product or disclosing the defect to consumers. *Id.* ¶¶ 33, 35, 43. Had Named Plaintiffs and the members of their proposed class and subclasses been alerted to the product's defective nature, they would not have purchased the freshener product or attached it to their vehicle. *Id.* ¶¶ 16–23, 44.

In their Amended Complaint, Named Plaintiffs assert eleven (11) claims against P&G on behalf of themselves, the proposed class, and the proposed subclasses:

- Count I: Breach of the Implied Warranty of Merchantability;

- Count II: Breach of Express Warranty;

- Count III: Violation of the California Unfair Competition Law ("UCL");

- Count IV: Violation of the California Consumers Legal Remedies Act ("CLRA");

- Count V: Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA");

- Count VI: Violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA");

- Count VII: Violations of the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA");

- Count VIII: Violations of the Montana Unfair Trade Practices and Consumer Protection Act ("MCPA") (Count VIII);

- Count IX: Violations of the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") (Count IX);

- Count X: Negligence; and

- Count XI: Unjust Enrichment.

Doc. 11, ¶¶ 51–85. Named Plaintiffs and the members of their proposed class and subclasses seek compensatory (price premium) and punitive damages and request that the Court order

P&G to "replace, recall, or adequately repair the defective Febreze Clips" or "provide adequate curative notice regarding the true nature of the defect." *Id.* ¶ 10.

With this background in mind, the Court will first consider P&G's request to strike the class allegations and then its request to dismiss the Named Plaintiffs' individual claims.

## II.    MOTION TO STRIKE CLASS ALLEGATIONS

### A.    Standard of Review

Federal Rule of Civil Procedure 23 governs class actions. "To obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b)." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945–46 (6th Cir. 2011). In this case, Plaintiffs seek certification under both Rule 23(b)(2) and Rule 23(b)(3). Doc. 11, ¶ 50.

A motion to strike class allegations tests whether plaintiffs "may certify a class as pleaded, which is to say as a matter of law or based on with limited development of the record." *Jones v. Lubrizol Advanced Materials, Inc.*, 583 F. Supp. 3d 1045, 1055 (N.D. Ohio 2022). Courts must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class and should make such a determination "at an early practicable time." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); Fed. R. Civ. P. 23(c)(1)(A).

A court may strike class action allegations before a motion for class certification or before the close of discovery where (1) the complaint itself demonstrates the requirements for maintaining a class action cannot be met, and (2) further discovery will not alter the central defect in the class claim. *Amerine v. Ocwen Loan Servicing LLC*, No. 2:14-CV-15, 2015 WL 10906068, at *2 (S.D. Ohio Mar. 31, 2015); *see also Pilgrim*, 660 F.3d at 949. Yet "courts should exercise caution when striking class action allegations based solely on the pleadings"

4

because it is often more prudent "to assess the propriety of class certification in the context of a fully briefed class certification motion rather than in the context of a motion to strike class claims at the pleading stage." *Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2015 WL 1286347, at \*16–17 (S.D. Ohio Mar. 20, 2015). While the plaintiff bears the burden of proving that the elements of class certification are satisfied, *see In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996), the party moving to strike class allegations "has the burden of demonstrating from the face of the [plaintiff's] complaint that it will be impossible to certify the class as alleged, regardless of the facts [the plaintiff] may be able to prove." *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, No. 1:16-CV-448, 2016 WL 10520133, at \*2 (S.D. Ohio Dec. 15, 2016) (citation omitted); *see also Rodriguez v. Life Time Fitness, Inc.*, No. 2:18-CV-1123, 2019 WL 4674863, at \*3 (S.D. Ohio Sept. 25, 2019) ("[T]he burden is onerous for striking a pleading, particularly one involving class claims.").

**B.    Law and Analysis**

In this case, Named Plaintiffs seek to represent and certify (1) a Nationwide Class defined to include all "persons or entities in the United States who have purchased or used a Febreze Clip"; and (2) eight subclasses composed of all "persons or entities" in Illinois, California, North Carolina, Texas, Montana, Florida, Tennessee, and Louisiana "who have purchased or used a Febreze Clip."[1] Doc. 11, ¶ 49. P&G urges the Court to strike the Named Plaintiffs' class allegations on several grounds. Doc. 12-1, PageID 103–23.

---

[1] Named Plaintiffs propose Florida and Tennessee subclasses but do not allege violations of the consumer protection statutes for those states. Doc. 11, ¶ 49.

i.    **Standing**

P&G first asserts that Named Plaintiffs' proposed class and subclasses are facially overbroad in that most putative members would lack standing because the classes are not limited to purchasers who experienced an injury in fact (*i.e.*, experienced the alleged defect). Doc. 12-1, PageID 103–04. Named Plaintiffs respond that even those putative class members who did not experience a leaking or damaging Febreze Clip have been harmed "by overpaying for a product that they would not have bought" had P&G disclosed the existence of a defect. Doc. 13, PageID 166.

The Article III standing requirements apply equally to class actions. *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005); *see also Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints[.]"). An individual has Article III standing only if he or she suffered an injury-in-fact that is reasonably traceable to a defendant's alleged wrongdoing and redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Although class members do not have to submit evidence of personal standing, a class cannot be certified if any members in the class would lack Article III standing. *Amchem Prods*, 521 U.S. at 612–13; *Jones*, 583 F. Supp. 3d at 1055 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)) ("Because 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not,' each class member must have standing."). A class is overbroad if it includes significant numbers of consumers who have suffered no injury or harm. *See, e.g.*, *McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001) (class found overbroad where it "would include members who have not suffered harm at the hands of Defendant and are not at risk to suffer such harm[.]"). As relevant here, "[w]here an

allegedly defective product results in harm to every potential class member that has already manifested, the class has standing. But where … the remaining allegations show a risk of harm in the future, [p]laintiffs will not be able to carry their burden under Rule 23 … making striking the class allegations an appropriate procedural response." *Jones*, 583 F. Supp. 3d at 1057.

In this case, no one disputes that Named Plaintiffs, who allege that they experienced vehicular property damage from use of the Febreze Clips, have standing. But Named Plaintiffs acknowledge that not all putative class members experienced harm in the form of leaky Febreze Clips. Doc. 13, PageID 166 (emphasis added) ("[The Named Plaintiffs] also allege that *many* putative class members were also harmed by virtue of the Clips leaking and causing damages to their vehicles."). With respect to the unnamed potential class members, Named Plaintiffs offer two primary theories of injury—first, that "[a]ll putative class members were injured in that they paid a premium to purchase a product with an undisclosed, material defect"; and second, that putative class members would not have purchased the Febreze Clips had P&G disclosed the existence of the defect. Doc. 11, ¶¶ 11, 46, 79; Doc. 13, PageID 166.

As to the first theory, the Court is reluctant at this stage to find that Named Plaintiffs have adequately alleged that they or putative class members paid a price premium. Under this concept, "a deceptive practice allows a manufacturer or vendor to charge a premium for a product that the manufacturer would not be able to command absent the deceptive practice." *Meta v. Target Corp.*, No. 1:14-CV-832, 2016 WL 11634651, at *6 (N.D. Ohio Sept. 12, 2016) (citation omitted); *see, e.g.*, *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 856 (6th Cir. 2013) ("If defective design is ultimately proved, all class members have experienced injury as a result of the decreased value of the product purchased."). This

concept, slightly narrower than the "benefit-of-the-bargain" theory, reflects consumers' "overpayment of a price premium based on allegedly inflated … representations." *Bechtel v. Fitness Equip. Servs.*, 339 F.R.D. 462, 484 – 85 (S.D. Ohio 2021); *see also Loreto v. Proctor & Gamble Co.*, 515 F. App'x 576, 577–78, 581 (6th Cir. 2013) (holding that plaintiffs suffered an injury in fact because they paid a price premium for a product relying on a misrepresentation). In this case, Named Plaintiffs recite how much they paid for the Febreze Clips and insist that they "overpay[ed]" and "would have paid less" for them. Doc. 11, ¶ 16–23; Doc. 13, PageID 166. But they do not allege facts as to, among other things, show how these charged prices were "premium" or what aspect of the product warranted a higher price. *Cf. Whirlpool*, 2009 WL 4623706, at ¶¶ 34–35 (allegations in third amended complaint that washing machines at issue were purchased because of energy savings and higher efficiency quality); *Crawford v. FCA US LLC*, No. 2:20-CV-12341, 2021 WL 3603342, at *1–*2 (E.D. Mich. Aug. 13, 2021) (internal quotations omitted) (finding plaintiffs who purchased trucks equipped with cooler but whose trucks never malfunctioned "have standing based on the injury of paying a higher price for a truck that they would have paid less for [ ] had [the defendant] disclosed the defective nature.").

Yet, the Court need not resolve this issue because Named Plaintiffs have sufficiently alleged class-wide injury at this early stage through their second theory of harm: that they bought Febreze Clips with knowledge of P&G's representations about the safety of the product but would not have done so had P&G disclosed the alleged leaking defect.[2] Doc. 11,

---

[2] The Court notes that the proposed class and subclass definitions include those individuals and entities who "purchased *or* used" a Febreze Clip. Doc. 11, ¶ 49 (emphasis added). Because it does not appear that those who merely *used* the Febreze Clips (rather than *buying* them) could have suffered economic loss, users who did not experience property damage from the Febreze Clips cannot show injury and lack standing. Thus, the Court **STRIKES** the class allegations related to this group of non-injured, non-purchase users.

8

¶¶ 3, 11, 31, 79, 90. This constitutes a concrete and particularized class-wide economic injury for purposes of Article III based on the limited record here. *See, e.g.,* *Barnett v. Kroger Co.,* No. 1:22-CV-544, 2024 WL 2078209, at *3–4 (S.D. Ohio May 8, 2024) (discussing cases and observing that "a seller's misrepresentations [can] give rise to cognizable economic injuries" where "the plaintiff would not have purchased the product but for the misrepresentation"); *Droesser v. Ford Motor Co.*, No. 19-cv-12365, 2023 WL 2746792, at *7 (E.D. Mich. Mar. 31, 2023) (emphasis added) ("[A] consumer who alleges she would not have purchased a vehicle (or would have paid less for it) had the manufacturer not misrepresented the vehicle to customers' detriment *or omitted mention of its significant limitations*, has alleged a plausible injury-in-fact.").[3]

## ii.   Predomination of Common Issues of Law

Next, P&G argues that the class claims here "vary widely between states" and "would require a painstaking choice-of-law inquiry or the application of varying state laws to class members' claims." Doc. 12-1, PageID 107–09. This in turn "prevents common issues of law from predominating and, therefore, precludes certification[.]" *Id.* at PageID 109. Named Plaintiffs say P&G's "concerns" are premature and "vastly overstated." Doc. 13, PageID 169.

---

[3]   P&G argues that the proposed class and subclasses "resemble much more closely the unmanifested defect cases (like [*Jones*]) rather than the 'price premium' cases (like *Whirlpool*)." Doc. 14, PageID 197. In *Jones*, homeowners brought a putative class action against the manufacturers and the designer of plastic pipes on behalf of proposed classes comprised of persons who owned houses containing the pipes for breach of warranty, negligence, and negligent failure to warn. *Jones*, 583 F. Supp. 3d at 1048. Upon review of the defendant's motion to strike the class allegations, the court agreed that the proposed class definitions "include[d] potentially millions of members who have no trouble with their pipes or fittings and lack standing because they have not suffered a concrete and particularized injury in fact." *Id.* at 1055. Although these putative class members "might experience harm in the future," the court held that this risk "does not confer standing." *Id.* at 1056. But the *Jones* court did not address economic harm to all purchasers based on failure to disclose a defect, other than to observe that the price premium theory had not been alleged and that the plaintiffs had not sufficiently supported their arguments. *Id.* at 1056–58. In this case, the Named Plaintiffs may show an injury that occurred at the point of sale. *See Barnett*, 2024 WL 2078209, at *4 ("Someone who buys an unmerchantable product has suffered an injury[.]"). Thus, in the exercise of caution, the Court declines to strike the class allegations for this reason at this time. *See Geary*, 2015 WL 1286347, at *16.

To demonstrate predominance, parties seeking class certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry is "far more demanding" than the commonality requirement of Rule 23(a)(2). *Amchem*, 521 U.S. at 624. Although individual differences between class members need not be nonexistent, they "must be of lesser overall significance and they must be manageable in a single class action[.]" *Hale v. Enerco Grp., Inc.*, 288 F.R.D. 139, 142 (N.D. Ohio 2012) (citation omitted).

When a putative class action contains members from several states, courts must undertake a choice of law analysis to determine which states' laws apply to plaintiffs' claims. *Rikos v. Procter & Gamble Co.*, No. 1:11-CV-226, 2012 WL 641946, at *5 (S.D. Ohio Feb. 28, 2012). Generally, federal courts sitting in diversity should apply the choice of law rules of the state in which they sit. *Muncie Power Prod. Inc. v. United Tech Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). Thus, Ohio's choice of law rules apply to Named Plaintiffs' claims. Doc. 11, ¶¶ 51–85. Under those rules, "the law of the place of injury controls unless another jurisdiction has a more significant relationship to the lawsuit," and, as relevant here, the consumer-protection laws of potential class members' home states will generally govern their claims. *Pilgrim*, 660 F.3d at 946 (citing *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984)).

The Sixth Circuit has recognized that there may be no predominance of common legal issues where the laws of multiple jurisdictions apply to a class action. *See Pilgrim*, 660 F.3d at 947 (concluding that because the "laws of the State where each injury took place would govern these claims ... no common legal issues favor a class-action approach"); *In re Am. Med. Sys., Inc.*, 75 F.3d at 1085 ("[I]f more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law"). But

10

the Court is not persuaded that these cases, on which P&G so heavily relies, direct striking all of the class claims here.

For instance, in *Pilgrim*, the Sixth Circuit affirmed the district court's decision striking class allegations surrounding consumer protection claims at the pleading stage "because each class member's claim would be governed by the law of the State in which he made the challenged purchase, and the differences between the consumer-protection laws of the many affected States would cast a long shadow over any common issues of fact plaintiffs might establish." 660 F.3d at 946–48. That said, the *Pilgrim* court also suggested that "a nationwide class covering claims governed by the laws of the various States could overcome this [predominance] problem by demonstrating considerable factual overlap." *Id.* at 947. Because the defendant's program "did not operate the same way in every State and the plaintiffs suffered distinct injuries as a result," the *Pilgrim* court concluded the predominance issue could not be surmounted. *Id.* at 946–48; *see also Ciccio v. SmileDirectClub, LLC*, No. 3:19-cv-00845, 2020 WL 2850146, at *16 (M.D. Tenn. June 2, 2020) ("The specific claims at issue in *Pilgrim* ... had features that made them inherently susceptible to factual, not merely legal, variation[s] on the basis of geography[,]" and "[t]hose factual issues, in addition to the fact that multiple states' laws were implicated, formed the basis for striking class allegations"). But here, unlike in *Pilgrim*, the potential class members allegedly suffered the same injuries no matter where they bought the Febreze Clips. Doc. 11, ¶¶ 46, 50; *see also, e.g.*, *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 576 (M.D. Tenn. 2020).

Moreover, in coming to its conclusion, the *Pilgrim* court utilized an "extensive analysis" of state consumer protection laws that the defendant provided, comprised of several pages explaining how different state laws varied and a lengthy "survey" that described how

the requirements of the relevant law in each state compared to one another. *See Pilgrim v. Universal Health Card, LLC*, No. 5:09-cv-00879, ECF Nos. 29-1, 29-5 (N.D. Ohio June 29, 2009). Although P&G offers a general primer on the various state laws applicable here (*see* Doc. 12-1, PageID 109–14), it is not the same type of rigorous analysis as provided to the *Pilgrim* court. When denying a motion to strike class allegations at the pleading stage, without a careful and specific showing about how state laws differ, a court is not in position to resolve that question. *See In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 568 F. Supp. 3d 837, 845 (E.D. Mich. 2021) (quoting *Fishon*, 501 F. Supp. 3d at 576); *Eliason v. Gentek Bldg. Prods., Inc.*, No. 1:10cv2093, 2011 WL 3704823, at *3 (N.D. Ohio Aug. 23, 2011) (refusing to strike class allegations because the issue of whether certification would require application of multiple states' laws "cannot be determined until discovery has taken place and choice of law provisions applied"); *see also Lunkenheimer Co. v. Pentair Flow Control Pac. PTY Ltd.*, No. 1:11-CV-824, 2014 WL 4450034, at *4 (S.D. Ohio Sept. 10, 2014) ("Where, as here, the choice of law analysis is a complicated, fact-intensive jumble, courts routinely decline to determine the issue at the motion to dismiss stage.").

Finally, Named Plaintiffs seek to proceed with a Nationwide Class and several state subclasses. Doc. 11, ¶¶ 1, 49. Named Plaintiffs plead the non-state-specific claims on behalf of themselves and the Nationwide Class or, in the alternative, the state subclasses. Named Plaintiffs also reserve the right to modify the class definitions "[s]ubject to additional information obtained through further investigation and/or discovery[.]" *Id.* ¶ 49. Because they may ultimately move to certify a class encompassing only some states, the issues P&G raises about conflicting state laws may never emerge. *See, e.g., Kimber Baldwin Designs*, 2016 WL 10520133, at *5–6 (declining to strike nationwide class allegations and explaining that

plaintiff reserved the right to modify the class definition and could ultimately move to certify a more limited class of compatible jurisdictions); *In re Gen. Motors*, 568 F. Supp. 3d at 846 (same). Accordingly, it would be more appropriate to review P&G's arguments at the class certification stage. Thus, the Court declines to strike all class allegations on this basis.

Despite the above analysis, P&G has shown that a class action cannot lie with respect to particular claims because of the nature of certain states' consumer protection laws. Under Montana and Louisiana law, there is no right to bring a class action to enforce consumer protection statutes. *See* La. Rev. Stat. Ann. § 51:1409(A); Mont. Code Ann. § 30–14–133(1). So, the Court **STRIKES** the class allegations underlying these claims (Counts VIII and IX).[4]

### iii. Predomination of Common Issues of Fact

P&G also asserts that fact questions will vary significantly across the proposed class and subclasses. To the extent that P&G argues that Named Plaintiffs cannot adequately plead injuries for every proposed class member, *see* Doc. 12-1, PageID 116, the Court has already addressed that issue in the discussion above. Putting that issue aside, P&G also contends that its affirmative defenses will require individualized inquiry and that there is a lack of common proof surrounding the nature of the injury, causation, and damages. *Id.* at PageID 117–18.

Class relief "is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1080. The commonality test "is

---

[4] "[S]tate laws that categorically prohibit the maintenance of class action lawsuits [are not] an effective bar to such suits if the state law that prohibits them is procedural in nature and is not 'so intertwined' with the right or remedy that it defines the scope of the right." *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 661 (E.D. Mich. 2011) (referencing *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins.*, 559 U.S. 393 (2010)). Courts have concluded that statutory restrictions on class actions which appear in the very statutes that define the substantive rights at issue survive *Shady Grove* and should continue to be enforced. *See, e.g., id.* at 661 n.4 (citing cases). Louisiana and Montana's restrictions on class actions appear in the substantive statutes under which Named Plaintiffs would claim relief, so they are sufficiently "intertwined" with the substantive rights defined in those statutes to survive under a *Shady Grove* analysis. *See, e.g., Bearden v. Honeywell Int'l Inc.*, No. 3:09-1035, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010).

qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *Id.*; *see also Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir. 1988) (finding that the "mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible"). Based on the limited record here, the common evidence will likely center on whether the Febreze Clips suffer from a uniform and undisclosed defect and, if so, whether class members were harmed at the point of purchase and/or the point of vehicular damage. And when, as here, the factual record is hardly developed, the Court declines to strike the class allegations without further discovery.

### iv.    Remaining Rule 23(a) Criteria

Finally, the Court looks to the rest of the Rule 23(a) elements, including numerosity, typicality, and adequacy of representation. P&G does not dispute numerosity[5] but argues that Named Plaintiffs have not satisfied the typicality and adequacy of representation requirements as a matter of law. Doc. 12-1, PageID 118–19.

As to typicality, Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.,* 75 F.3d at 1082). Where class members' claims turn on individual permutations that

---

[5]    P&G does note that Named Plaintiffs' proposed class definition broadly includes everyone who has ever bought or used a Febreze Clip in the United States. Doc. 11, ¶ 49. Although Named Plaintiffs reserved the right to expand or narrow this definition, the Court observes that as currently stated, it could create ascertainability issues in that it encompasses amorphous "users" and does not limit to a specific period, among other things.

"varied from person to person," the claims of the named plaintiffs are not typical. *Colley v. Procter & Gamble Co.*, No. 1:16-CV-918, 2016 WL 5791658, at *9 (S.D. Ohio Oct. 4, 2016); *see also Romberio v. UnumProvident Corp.,* 385 F. App'x 423, 431 (6th Cir. 2009) (finding typicality lacking "[w]here a class definition encompasses many individuals who have no claim at all to the relief requested"). As to adequacy, Rule 23(a)(4) allows certification only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The representative "must have common interests with unnamed members of the class," and it must appear that "the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors,* 532 F.2d 511, 525 (6th Cir. 1976) (citation omitted); *see also Goble v. Trumbull Ins.*, No. 2:20-CV-5577, 2023 WL 9050956, at *6 (S.D. Ohio Dec. 29, 2023) (citations omitted) ("The adequacy inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent' … as well as intra-class conflicts."). The adequacy requirement "tends to merge" with typicality and commonality, each of which "serve as guideposts for determining" whether the class action is appropriate. *Colley*, 2016 WL 5791658, at *10.

Named Plaintiffs' theory of this case encompasses two somewhat overlapping groups: (1) those class members who were harmed when the Febreze Clips leaked and damaged their property (vehicles); and (2) those class members who were harmed at the time of purchase and experienced the purely economic loss of the value of the Febreze Clips themselves. Doc. 13, PageID 160; Doc. 11, ¶¶ 11, 16–23, 34–38, 48. All of the Named Plaintiffs purchased Febreze Clips, ranging in price from $1.99 in North Carolina to $6.49 in Florida. Doc. 11, ¶¶ 16–23. But unlike all the proposed class members, the Named Plaintiffs each experienced vehicular damage—estimated to be hundreds or thousands of dollars in some cases. *Id.* This

demonstrates the disparity in financial incentives between the representative and individual aspects of the Named Plaintiffs' claims, which could disproportionately influence their decisions throughout litigation and compromise their loyalty to the class members who seek damages only for the loss in value of the Febreze Clips.

Additionally, Named Plaintiffs have alleged claims asserting damage to their vehicles that sound in tort (Doc. 11, ¶¶ 16–23, 35), while the claims of other potential class members who experienced only economic harm in the form of the lost value of the Febreze Clip may sound in contract considering rules against economic losses in tort actions. As a result, Named Plaintiffs' reliance on *Whirlpool*, 722 F.3d at 855–57, is not exactly on point. In that case, the representative plaintiffs asserted the same purely economic harm (the loss of the value of the washing machine itself) as the class members. Unlike Named Plaintiffs here, however, the plaintiffs in *Whirlpool* did not also seek relief for additional property damage, such as damage to clothing washed in a moldy machine. These different legal theories resulting in different types of relief are significant cause for concern. *See, e.g.*, *Pansiera v. Home City Ice Co.*, 341 F.R.D. 223, 232 (S.D. Ohio 2022) (citation and internal quotations omitted) ("[A] plaintiff must demonstrate that they *can prove* ... that all members of the class have suffered the same injury.").

However, "[t]o be typical[,] a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *In re Am. Med. Sys., Inc.,* 75 F.3d at 1078 (quoting *Senter*, 532 F.2d at 525 n.31). "[I]n pursuing his own claims, the named plaintiff [should] also advance the interests of class members." *Id.* at 1082 (emphasis added). The Named Plaintiffs have expressed no indication that they will not represent the interests of the proposed class members who did not suffer the same type of property damage as they

16

did. And there is commonality and typicality as it stands now, at least with respect to the existence of an alleged defect that resulted in the economic loss of the value of the Febreze Clips. Considering that Named Plaintiffs have yet to move for class certification or proffer a class-wide damages model, the Court does not find that it is "impossible to certify the class as alleged" at this point in the case. *Kimber Baldwin Designs*, 2016 WL 10520133, at *2.

      **v.**     **Rule 23(b) Criteria**

The Amended Complaint asks that the claims be "maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure." Doc. 11, Prayer for Relief. Upon satisfying the Rule 23(a) factors, plaintiffs meet Rule 23(b)(3) if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As discussed above, based on the pleadings at this early phase of the case, the issues about the alleged defect appear common to the class and predominate over individual inquiries. In addition, the proposed class members here are "not likely to file individual actions—the cost of litigation would dwarf any potential recovery." *In re Whirlpool Corp.*, 722 F.3d at 861. Rule 23(b)(3) is thus satisfied at this stage.

Named Plaintiffs also seek class-wide equitable relief in the form of requiring P&G to "replace, recall, or adequately repair the defective Febreze Clips" and "to provide adequate curative notice regarding the true nature of the defect." Doc. 11; Doc. 13, PageID 175. Rule 23(b)(2) allows class certification when a class representative meets all of Rule 23(a)'s requirements and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief

is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) applies "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant," nor does it "authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.* at 360–61. Claims for monetary relief may not be certified under Rule 23(b)(2) where "the monetary relief is not incidental to the injunctive or declaratory relief." *Id.* at 360.

The Court is persuaded that Named Plaintiffs seek monetary damages as their primary form of relief. *See, e.g.*, Doc. 11, ¶ 10 ("Plaintiffs and similarly situated purchasers and users of the Febreze Clips have sustained—and continue to sustain—ascertainable and significant loss of money, property and/or loss in value of their automobiles, and loss of benefit of the bargain ('price premium') damages."), ¶ 12 ("Plaintiffs bring this suit on behalf of themselves and those similarly situated to require P&G to disclose the Defect associated with the Febreze Clips and to obtain compensatory damages, restitution, disgorgement of profits, and all other available relief for economic harm already caused."). In this way, the injunctive relief is incidental to the monetary relief. Each proposed class member would also be entitled to an individualized award of damages, depending on whether the class member sustained only economic damages or additional property damage.

More problematically, Named Plaintiffs lack standing to bring claims for injunctive relief. To seek injunctive relief, a plaintiff must show that (1) she is under threat of suffering "injury in fact" that is concrete and particularized; (2) the threat of injury is actual and imminent, not conjectural or hypothetical; (3) the threat of injury is fairly traceable to the

challenged action of the defendant; and (4) it is likely that a favorable judicial decision will prevent or redress the injury. *Friends of Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.,* 528 U.S. 167, 180–181 (2000). "[W]here the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *Grendell v. Ohio Supreme Ct.*, 252 F.3d 828, 833 (6th Cir. 2001). Because Named Plaintiffs have not alleged plans to buy or use Febreze Clips again, and because they are on notice of a potential defect even if they intend to re-purchase the Febreze Clips, they have not asserted that they are under threat of an actual and imminent injury.

To no avail, Named Plaintiffs seek to liken this case to *In re Amla Litig.*, 282 F. Supp. 3d 751 (S.D.N.Y. 2017). There, the court addressed similar arguments to those discussed above and granted class certification under Rule 23(b)(2), finding that past purchasers could obtain injunctive relief. *Id.* at 769–70. Three years later, however, the Second Circuit rejected this proposition:

> We are aware that some district courts in this Circuit have been hesitant to find that past purchasers cannot obtain injunctive relief, and so cannot constitute a Rule 23(b)(2) class … [A]s many other district courts in our Circuit have already noted, courts cannot permit injunctive relief through class settlement when plaintiffs would otherwise lack standing to seek such relief under Article III. Where there is no likelihood of future harm, there is no standing to seek an injunction, and so no possibility of being certified as a Rule 23(b)(2) class. As such, the district courts in many cases—involving past purchasers of such varied products as skin creams, vodka, and satellite radio subscriptions—have come to the conclusion that past purchasers cannot be certified as a class under Rule 23(b)(2).

*Berni v. Barilla S.p.A.*, 964 F.3d 141, 148–49 (2d Cir. 2020); *see also In re Nissan N. Am., Inc. Litig.*, No. 3:19-CV-00843, 2023 WL 2749161, at *6 (M.D. Tenn. Mar. 31, 2023), *vacated and remanded on other grounds*, 122 F.4th 239 (6th Cir. 2024) ("The Court is not persuaded that certification is appropriate" under Rule 23(b)(2)).

19

Accordingly, to the extent that Named Plaintiffs' allegations seek a Rule 23(b)(2) class, the Court **STRIKES** such allegations, and Named Plaintiffs may not individually seek injunctive relief here.

In sum, the Court **STRIKES** Named Plaintiffs' class allegations to the extent that they (1) go toward a Rule 23(b)(2) class; (2) implicate users of the Febreze Clips who did not buy the Clips or suffer property damage; and (3) support Counts VIII (Montana) and IX (Louisiana). Although the Court has serious concerns about Named Plaintiffs' ability to certify the class and subclasses they otherwise propose, the Court declines to take the drastic step of striking the remaining class allegations at this stage, and P&G's Motion is **DENIED** in this respect.

## III.  MOTION TO DISMISS

### A. Standard of Review

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal,* courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before

defendants endure the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

### B.  Law and Analysis

P&G argues that Named Plaintiffs have individually failed to adequately state a claim related to their causes of action. Doc. 12, PageID 123. Its argument is twofold—first, that Named Plaintiffs did not allege the requisite existence of a defect; and second, that Named Plaintiffs did not allege sufficient facts to support their claims. *Id.* at PageID 124, 126, 129–30. Named Plaintiffs dispute these points.

### i.      Existence of a Material Defect

A complaint must provide sufficient notice to a defendant of the nature of the plaintiff's claims. *Twombley*, 550 U.S. at 555 (plaintiff's statement must "give the defendant fair notice of what ... the claim is and the grounds upon which it rests."). The parties here agree that in the context of defective products, courts generally find this pleading requirement satisfied if the plaintiff alleges that "the product broke either because it was defectively manufactured or defectively designed" and pleads "with specificity what portion of the product failed and when it failed." Doc. 12-1, PageID 124; Doc. 13, PageID 176; *see Clark v. Wright Med. Tech., Inc.*,

21

No. 3:11-CV-00162, 2011 WL 2689381, at *2 (S.D. Ohio July 11, 2011); *see also Barreca v. AngioDynamics, Inc.*, No. 4:15CV1111, 2015 WL 5085260, at *3 (N.D. Ohio Aug. 27, 2015) ("At a minimum, courts have required allegations that the defendant manufactured the product, that the product was used by the plaintiff, that the product failed while being used by the plaintiff, and that the portion of the product that failed could be identified and is so identified in the complaint."); *Marcum v. DePuy Orthopedics, Inc.*, No. 1:12-CV-834, 2013 WL 1867010, at *1 (S.D. Ohio May 2, 2013) (same). Even so, P&G insists that Named Plaintiffs "have fallen well below" this standard because they "do not identify a part or piece of the Clips that allegedly failed, nor do they make any allegations (even conclusory ones) about how the design or manufacturing process led to the alleged defect." Doc. 12-1, PageID 125.

The Court finds that Named Plaintiffs have adequately pleaded the existence of a defect to avoid dismissal. The Amended Complaint alleges that (1) P&G claimed that its product worked through a "unique membrane [that] allows the product to slowly release scented oils"; and (2) "Febreze Clips contain one or more design and/or manufacturing defects which under the intended use and conditions, cause the Febreze Clips to leak liquid substances." Doc. 11, ¶¶ 3, 5. In other words, during Named Plaintiffs' use, the Febreze Clips manufactured by P&G malfunctioned and leaked, potentially because of a problem with the membrane that controlled the release of the oils. Although more detail as to the alleged defect would be preferred, Named Plaintiffs have sufficiently notified P&G of the nature of the defect.

### ii. Sufficiency of the Allegations

P&G also contends that Named Plaintiffs fail to adequately allege facts in support of their state-law consumer protection claims and their common-law claims. Doc. 12-1, PageID

126–30. From the start, although P&G asserts that Named Plaintiffs "failed to adequately state a claim on *each* of their causes of action," *see* Doc. 12-1, PageID 123 (emphasis added), it does not make any specific arguments about Named Plaintiffs' negligence claim. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). The Court will not do so for P&G here and **DENIES** its request to dismiss the negligence claim wholesale.[6]

The Court addresses the remaining claims below.

### a.      Consumer Protection Claims (Counts III–IX)

The Amended Complaint asserts claims against P&G under the consumer protection statutes of various states: Illinois, California, North Carolina, Texas, Montana, and Louisiana. Doc. 11, ¶¶ 62–102. P&G argues that Named Plaintiffs have failed to plead an unfair, deceptive, or fraudulent act as required by each of these statutes. Doc. 12-1, PageID 126.

Named Plaintiffs recite the allegations that "form the basis for" their consumer protection statutory claims: (1) P&G was aware of the alleged defect; (2) despite that awareness, P&G "has done nothing to remedy [it] or disclose its existence to unsuspecting

---

[6] The negligence claim is asserted on behalf of all Named Plaintiffs. Doc. 11, PageID 85. Under Ohio's choice-of-law rules, there is "a presumption" for tort claims that "the law of the place of the injury controls." *Herndon v. Torres*, 249 F. Supp. 3d 878, 884 (N.D. Ohio 2017) (internal quotation marks and citations omitted). This presumption controls "unless another jurisdiction has a more significant relationship to the lawsuit." *Id.* (internal quotation marks and citation omitted). Considering these principles, the Court finds that the law of the state where a Named Plaintiff's injury took place governs their individual claims. This dooms Plaintiff Jeansonne's negligence claim—Louisiana's product liability statute bars her from asserting a freestanding negligence claim. *See Vallee v. Crown Equip. Corp. of Ohio*, No. CV 20-1571, 2022 WL 84569, at *3 (E.D. La. Jan. 7, 2022) (dismissing plaintiff's claims of negligence and negligent maintenance and repair based on exclusivity provision in Louisiana product liability statute). Her negligence claim is **DISMISSED**.

customers"; (3) P&G advertises the Febreze Clips as "safe to use"; and (4) the Febreze Clips are not "safe to use" because of the defect, such that P&G misrepresented the safety of its product. Doc. 13, PageID 178. These allegations, as the parties acknowledge, are based on P&G's affirmative misrepresentation and/or fraudulent omission of known information about the defect, and such theories of liability are generally actionable in all the states implicated here.[7] *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("Fraudulent omissions are actionable under both [the UCL and the CLRA]."); *Pappas v. Pella Corp.*, 844 N.E.2d 995, 1004 (Illinois Ct. App. 2006); *Washington v. Trinity Indus., Inc.*, No. 1:15CV517, 2016 WL 4544048, at *3 n.8 (M.D.N.C. Aug. 31, 2016) ("[F]ailing to disclose a known product defect to consumers arguably could constitute an 'unfair practice' under N.C. Gen. Stat. § 75-1.1."); *Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 480 (E.D. Tex. 2021) (applying Texas law and discussing a DTPA claim on misrepresentation and failure to disclose theories); *Nelson v. Forest River, Inc.*, No. CV-22-49-BMM, 2023 WL 2610769, at *6 (D. Mont. Mar. 23, 2023) (applying Montana law); *Delaware Valley Fish Co. v. 3South LLC*, 601 F. Supp. 3d 7, 24 (M.D. La. 2022) (applying Louisiana law).

In any event, there are certain threshold issues that the Court must address before reaching the merits of these claims. First, as to the Louisiana claim (Count IX), the availability of remedies under the LUTPA was transformed when the Louisiana Legislature enacted the

---

[7] In a diversity action, the forum state's choice-of-law rules determine which state's substantive law will apply to the dispute. *Miller v. State Farm Mut. Auto. Ins.*, 87 F.3d 822, 824 (6th Cir. 1996). Under Ohio choice-of-law principles, "the law of the place of injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Morgan*, 474 N.E.2d at 289. In determining the state with the most significant relationship, Ohio courts consider: (1) "the place of the injury"; (2) the location "where the conduct causing the injury" took place; (3) "the domicile, residence, ... place of incorporation, and place of business of the parties"; (4) "the place where the relationship between the parties ... is located"; and (5) any of the factors listed in Section 6 of the Restatement (Second) of Conflict of Laws "which the court may deem relevant to the litigation." *Id.* Gauged by these factors, the consumer-protection laws of the state where each injury took place governs the Named Plaintiffs' claims. *See, e.g.*, *Pilgrim*, 660 F.3d at 946.

Louisiana Product Liability Act ("LPLA"), which "demonstrate[d] the legislature's intent to make the LPLA and Louisiana redhibition law the sole vehicles for a suit against a manufacturer for damages arising from a defective product." *In re Vioxx Prod. Liab. Litig.,* No. MDL 1657, 2010 WL 11570867, at \*12 (E.D. La. Mar. 31, 2010). In other words, the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. Ann. § 9:2800.52. Because the Named Plaintiffs here cannot circumvent this exclusivity provision by framing their product liability allegations as LUPTA claims, Count IX is accordingly **DISMISSED**. *See, e.g.*, *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, No. 15-CV-03913, 2021 WL 2853069, at \*13 (E.D. La. July 8, 2021); *Reddick v. Medtronic, Inc.*, No. CV 18-8568, 2020 WL 2759077, at \*4 (E.D. La. Apr. 14, 2020) (citing cases).

Next, each state here has subjected consumer protection claims sounding in fraud to the heightened pleading requirement in Fed. R. Civ. P. 9(b). *See, e.g.*, *Franklin*, 569 F. Supp. 3d at 480; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1058 (N.D. Ill. 2022); *Guthridge v. Johnson & Johnson Corp. & Ethicon, Inc.*, 2023 WL 6626175, at \*5 (D. Mont. Sept. 22, 2023); *Sasso v. Tesla, Inc.,* 584 F. Supp. 3d 60, 78–79 (E.D.N.C. 2022), *aff'd sub nom.*, 2024 WL 2795180 (4th Cir. May 31, 2024). To satisfy Rule 9(b), a plaintiff must plead the "who, what, when, where, and how" of the fraud. *See, e.g.*, *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quotations omitted). P&G insists that Named Plaintiffs have not met these requirements, but the Court disagrees—the Amended Complaint alleges (1) where and when each Named Plaintiff bought the Febreze Clips and read the packaging and instructions; (2) that P&G advertised the

Febreze Clips on its website as "safe to use" and workable "in virtually every vehicle"; and (3) that P&G omitted facts about the alleged defect, failed to "enhance[e] the warnings or instructions" to account for the defect, and misled customers to purchase the Febreze Clips without knowledge of the defect. Doc. 11, ¶¶ 3–8, 16–23. Thus, to the extent that Named Plaintiffs' claims sound in fraud, they have satisfied Rule 9(b)'s heightened pleading standard.

Moving to the merits of the claims, P&G asserts that Named Plaintiffs have not shown any unfair, deceptive, or fraudulent acts encompassed by the consumer protection statutes. Doc. 12-1, PageID 126. As for the "affirmative representations" related to the safety of the Febreze Clips and their efficacy in "virtually every vehicle," the Court agrees that these statements are not deceptive. As to safety, Named Plaintiffs found P&G's representation about safety on the portion of its website dedicated to the safety standards of Febreze in general. Doc. 11, ¶ 3. The website discusses Febreze's chemical formula, toxicity, flammability, and irritation levels.[8] Named Plaintiffs do not allege any personal injuries, and nowhere on the website does P&G represent that the Febreze Clips specifically are safe for vehicular use. As to the language that Febreze Clips "work in virtually every vehicle," this amounts to puffery rather than a promise that the Febreze Clips have no potential at all to fail. *See, e.g.*, *Carlson v. The Gillette Co.*, No. CV 14-14201-FDS, 2015 WL 6453147, at *5 (D. Mass. Oct. 23, 2015) (emphasis in original) ("All consumer products, indeed all manufactured products, have *some* propensity to fail."); *Williams v. Yamaha Motor Co.*, No. CV1305066BROVBKX, 2014 WL 12597039, at *14 (C.D. Cal. Aug. 19, 2014), *aff'd*, 851 F.3d

---

[8] "[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 653 (S.D. Ohio 2016) (citations omitted); *see also Williams v. CitiMortgage, Inc.*, 498 Fed. App'x. 532, 536 (6th Cir. 2012) (per curiam) ("The law is clear that the Court may consider [a document] attached to the Complaint … in determining whether dismissal is proper.").

1015 (9th Cir. 2017) (discussing puffery). In context, this statement more likely concerns the types of vehicles in which the Febreze Clips could be installed. As a result, the Court finds that these statements are not actionable affirmative misrepresentations.

Looking to Named Plaintiffs' omission-based theory of liability, the parties focus on the materiality of the excluded information. Doc. 12-1, PageID 128; Doc. 13, PageID 181–82. Named Plaintiffs argue that a fact is material such that it must be disclosed if a reasonable purchaser would deem it important in deciding how to act in the transaction. Doc. 13, PageID 181 (citation and internal quotations omitted). P&G agrees with this proposition but contends that the materiality analysis should also include the rate of failure of the Febreze Clips, which P&G argues is "extremely low." Doc. 14, PageID 204.

"[A] fact is deemed 'material,' and obligates an exclusively knowledgeable defendant to disclose it, if a 'reasonable [consumer]' would deem it important in determining how to act in the transaction at issue." *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1303 (S.D. Cal. 2020) (citation omitted); *see also Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Illinois 1996) ("A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase."). Whether a plaintiff has sufficiently alleged materiality with particularity is a fact-specific question that courts must analyze case-by-case. *See, e.g.*, *Connick*, 675 N.E.2d at 595. Named Plaintiffs allege that "[h]ad [they] known of the Defect at the time of their purchase, they would not have purchased the Febreze Clips." Doc. 11, ¶ 11.

This Court is aware, however, of P&G's argument that isolated failures do not mean that a product suffers from a defect, nor do such failures obligate sellers to disclose every

potential failure that could occur. But Named Plaintiffs do not allege that P&G should have disclosed the failure rate of the Febreze Clips—rather, they allege that a defect makes the Febreze Clips leak. Therefore, Named Plaintiffs need not allege failure rates, and to the extent that such rates factor into the analysis, P&G may raise those arguments at class certification or otherwise.

Accordingly, Named Plaintiffs' claim under LUPTA (Count IX) is **DISMISSED**, but P&G's request for dismissal is **DENIED** as to the remaining consumer protection claims.

### b.　　　Breach of Implied Warranty (Count I)

P&G asserts that "the concept of a breach of implied warranty largely overlaps with the concept of a defective product—to the extent that some states consider them identical claims." Doc. 14, PageID 204. Therefore, P&G reasons, its "arguments about the failure to plead defect directly apply to [Named Plaintiffs'] implied warranty claims." *Id.* Because the Court found that Named Plaintiffs adequately pleaded the existence of a defect, P&G's motion to dismiss Count I is **DENIED**.[9]

### c.　　　Breach of Express Warranty (Count II)

P&G next challenges Named Plaintiffs' claims for breach of express warranty,[10] arguing that they do not adequately allege reliance for Plaintiffs Alexander (North Carolina) or Keegan (Texas) and that they have identified no affirmations or promises that are express warranties. Doc. 12-1, PageID 129–30. Named Plaintiffs respond that reliance has been

---

[9]　Like her negligence claim, however, Plaintiff Jeansonne's breach of implied warranty claim is barred by the LPLA and must be **DISMISSED**. *See Lewis v. GE Healthcare, Inc.*, No. 5:19-CV-00490, 2020 WL 1490719, at *4 (W.D. La. Mar. 25, 2020) (citing cases).

[10]　Plaintiff Jeansonne is barred by the LPLA from bringing a freestanding express warranty claim, so her claim must be **DISMISSED**. *See Guillot v. Aventis Pasteur, Inc.*, No. CIV.A. 02-3373, 2013 WL 4508003, at *14 (E.D. La. Aug. 22, 2013).

shown and that "through its product labeling and advertising, P&G created express warranties by representing to consumers that the Clips would be of 'high quality, at a minimum would work properly, and would be free from defects and fit for normal use.'" Doc. 13, PageID 183; Doc. 11, ¶ 58.

The Uniform Commercial Code, as adopted in most states, provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise" and that "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *See, e.g.*, Cal Com. Code § 2313; N.C. Gen. Stat. § 25–2–313; 810 Ill. Comp. Stat. Ann. 5/2-313; T.C.A. § 47-2-313. In this case, Named Plaintiffs do not point to any standalone written warranty or any language explicitly including the term "warranty"— instead, they generally point to P&G's promises that the Febreze Clips would be safe to use, would be of high quality, at a minimum would work properly, and would be free from defects and fit for normal use. Besides the safety and workability statements, which appear on P&G's website, Named Plaintiffs do not specify where these alleged promises come from beyond vaguely referencing "product labeling and advertising."

These issues distinguish this case from *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 618 (N.D. Ohio 2016). In *Traxler*, the plaintiffs' allegations were based on an express limited warranty "written on the label appended to" the product, which the court pointed to in rejecting the defendant's request for dismissal for failure to identify the precise representations. *Id.* at 612–14, 618 (emphasis added) ("Plaintiffs allege, and the Court presumes, that Plaintiffs read the description of the Products *printed on the labels of the cans*, and

relied on those representations, before purchasing them.") (emphasis added). Named Plaintiffs here have identified no specific warranty or explained what language appeared on the Febreze Clip packaging at all, let alone that it amounts to an actionable warranty.

Moreover, affirmations merely of the value of the goods or statements purporting to be merely the seller's opinion or commendation of the goods seldom create a warranty. *See* Tex. Bus. & Com. Code Ann. § 2.313(b); 810 Ill. Comp. Stat. Ann. 5/2-313(2); Cal. Com. Code § 2313(2). If the Court construes the language generally identified by the Named Plaintiffs as actual statements (rather than implications supporting an implied warranty claim), many statements are not affirmative declarations of fact but fall into the category of opinions or commendations. *See, e.g.*, *Aaron v. Nissan N. Am., Inc.*, No. 2:10-CV-47-TJW, 2010 WL 11553166, at *2 (E.D. Tex. Sept. 22, 2010) ("Specifically, stating that a car is a 'luxury vehicle' and constructed with 'high quality materials' is opinion and not an actionable misrepresentation of fact."); *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 908 (N.D. Ill. 2013) ("Illinois courts have held that phrases such as, 'high-quality,' 'expert workmanship,' 'custom quality,' 'perfect,' 'magnificent,' 'comfortable,' 'picture perfect,' and the 'best' are puffery.").

Because Named Plaintiffs have not stated a claim for breach of express warranty, the Court need not address the arguments of Plaintiffs Alexander and Keegan specifically, and Count II is **DISMISSED**.

### d.  Unjust Enrichment

Although the elements of unjust enrichment vary by jurisdiction, "when stripped to its essence, a claim of unjust enrichment requires [plaintiffs] to allege sufficient facts to show that [defendants] received a benefit and under the circumstances of the case, retention of the

benefit would be unjust." *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2014 WL 2993753, at *25 (E.D. Mich. July 3, 2014). P&G objects to the first prong and insists that Named Plaintiffs have failed to demonstrate how they conferred a benefit on P&G because they bought the Febreze Clips from third-party retailers. Doc. 12-1, PageID 130.

Courts in the applicable states have recognized that plaintiffs need not have directly conferred benefits on defendants to prevail on unjust enrichment claims. *See, e.g.*, *Wiegel v. Stork Craft Mfg., Inc.*, 780 F. Supp. 2d 691, 695 (N.D. Ill. 2011) (citation and internal quotations omitted) ("[I]n Illinois, courts emphasize the defendant's retention of the benefit, rather than plaintiff's conferral, and thus [Illinois unjust enrichment law] does not specifically require that plaintiffs directly confer a benefit on defendant."); *Nava v. Kobe Steel, Ltd.*, No. 18-CV-01423-VC, 2019 WL 5173767, at *1 (N.D. Cal. Oct. 8, 2019) (citation omitted) (finding that to recover for unjust enrichment under California law, "it is not essential that money be paid directly to the recipient by the party seeking restitution"); *In re Okedokun*, 593 B.R. 469, 580 (Bankr. S.D. Tex. 2018) ("Texas law also reveals that unjust enrichment can touch 'passively received' benefits[.]"); *New Prime, Inc. v. Harris Transp. Co.*, 729 S.E.2d 732, 743–744 (N.C. App. 2012) (North Carolina law does not require the plaintiff to directly confer the benefit on the defendant to recover for unjust enrichment); *N. Cheyenne Tribe v. Roman Cath. Church ex rel. Dioceses of Great Falls/Billings*, 296 P.3d 450, 457 (Mont. 2013) ("[A] claim for unjust enrichment requires proof of … '(1) a benefit conferred on one person by another[.]'"); *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) ("[A] plaintiff need not establish that the defendant received a direct benefit from the plaintiff."); *In re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d 1304, 1328 (S.D. Fla. 2020) ("[D]irect contact is not required to state a claim for unjust enrichment under Florida law.").

Named Plaintiffs have alleged that P&G received a benefit in the form of the proceeds from the Febreze Clips and that, because of the alleged defect and P&G's concealment of it, P&G's retention and of the benefit would be unjust. Doc. 11, ¶¶ 82, 84. Thus, the Court will not dismiss Named Plaintiffs' unjust enrichment claim at this stage. P&G's motion to dismiss this claim is **DENIED**.[11]

Accordingly, P&G's motion to dismiss is **GRANTED** as to Count II (breach of express warranty) for all Named Plaintiffs and as to Counts I (breach of implied warranty), IX (Louisiana consumer protection claim), X (negligence), and XI (unjust enrichment) for Plaintiff Jeansonne. P&G's motion is otherwise **DENIED**.

## IV.    CONCLUSION

For the reasons stated, the Court **GRANTS in part** and **DENIES in part** P&G's Motion (Doc. 12) to the extent that it requests striking of Named Plaintiffs' class allegations. The Court **STRIKES** Named Plaintiffs' class allegations to the extent that they go toward a Rule 23(b)(2) class, to the extent that they implicate users (not purchasers) of the Febreze Clips who did not experience vehicular damage, and to the extent that they support Counts VIII and IX but otherwise **DENIES** the Motion.

The Court **GRANTS in part** and **DENIES in part** P&G's Motion (Doc. 12) to the extent that it requests dismissal of Named Plaintiffs' claims. P&G's motion to dismiss is **GRANTED** as to Count II for all Named Plaintiffs and as to Counts I, IX, X, and XI for Plaintiff Jeansonne. P&G's Motion is otherwise **DENIED**.

---

[11] Despite the above, Plaintiff Jeansonne may not individually maintain an unjust enrichment action under Louisiana law because of the LPLA's exclusivity provision. *See Pitre v. Yamaha Motor Co.*, 51 F. Supp. 3d 644, 661 (E.D. La. 2014). Her unjust enrichment claim is therefore **DISMISSED**.

**IT IS SO ORDERED.**

March 31, 2025

Jeffery P. Hopkins
United States District Judge